669 So.2d 387 (1996)
Richard A. RIZER and Cherice R. Baldwin
v.
AMERICAN SURETY AND FIDELITY INSURANCE COMPANY, et al.
No. 95-C-1200.
Supreme Court of Louisiana.
March 8, 1996.
Rehearing Denied April 19, 1996.
Daniel Alexander Reed, Seale, Smith, Zuber & Barnette, for Applicant.
Steven A. Adams, McGlinchey, Stafford, Lang, Kirk Albert Patrick, III, for Respondent.
James Elwood Moore, Jr., for Rachel C. Moore (amicus curiae).
JOHNSON, Justice.[*]
On March 30, 1990, a vehicle owned by Gregory W. Baldwin and driven by Richard *388 A. Rizer was allegedly struck from the rear by a vehicle driven by Jerry W. Boudinot, Jr. On July 27, 1990, Rizer and his guest passenger, Cherice W. Baldwin, filed suit against Boudinot's liability carrier, American Surety & Fidelity Insurance Company (American Surety). Subsequently, American Surety was ordered into liquidation. On August 5, 1992, plaintiffs amended their petition to name Louisiana Insurance Guaranty Association (LIGA) and State Farm Insurance Company (State Farm), Gregory Baldwin's liability carrier and uninsured and/or underinsured carrier, as defendants. On October 15, 1992, over two years after the accident, plaintiffs filed a supplemental and amending petition naming Boudinot as a defendant. On January 7, 1993, almost three years after the accident, Rizer filed a second supplemental and amending petition adding United Services Automobile Association[1] (USAA), Rizer's uninsured motorist carrier, as a defendant.
USAA filed an exception of prescription contending that it was not timely sued within the two year prescriptive period pursuant to La.R.S. 9:5629 and that prescription was not interrupted because USAA was not solidarily liable with any of the parties sued within the prescriptive period. The trial judge maintained the exception of prescription. The court of appeal reversed finding that American Surety and USAA were solidary obligors and, thus, timely suit against American, the tortfeasor's liability carrier, interrupted prescription as to USAA, Rizer's uninsured motorist carrier.[2] Relying, in part, on Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982), the court of appeal reasoned that solidarity existed because both American Surety and USAA were "obliged to compensate plaintiff for the same damage, i.e., his personal injuries resulting from the March 1990 accident." The court of appeal found it irrelevant that American Surety and USAA were "contractually liable for different dollar portions of the same damage, i.e., the uninsured motorist insurer is liable to plaintiff only for the amount of his damages above the liability insurer's policy limits...." We granted certiorari to review the correctness of this decision.[3]
The issue presented for our consideration is whether an accident victim's uninsured motorist carrier is solidarily obligated with the tortfeasor's liability carrier so that the victim's timely suit against the latter interrupts prescription with regard to the victim's uninsured motorist carrier.
Actions against a underinsured/uninsured carrier are subject to a two year prescriptive period under La.R.S. 9:5629 which provides:
Actions for the recovery of damages sustained in motor vehicle accidents brought pursuant to uninsured motorist provisions in motor vehicle insurance policies are prescribed by two years reckoning from the date of the accident in which the damage was sustained.
Prescription is interrupted by the filing of suit in a court of competent jurisdiction. La. Code Civ.P. art. 3462. The interruption of prescription against one solidary obligor is effective against all solidary obligors. La. Civ.Code art. 1799 and 3503. Ordinarily, the burden of proof is on the party pleading prescription; however, when the plaintiff's petition has clearly prescribed on its face, as here, the burden shifts to the plaintiff to prove that prescription has been suspended or interrupted. Younger v. Marshall Industries, Inc., 618 So.2d 866, 869 (La.1993); Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383 (La.1993). Additionally, if the plaintiff's basis for claiming interruption of prescription is solidary liability between two or more parties, then the plaintiff *389 bears the burden of proving that solidarity exists. Younger, 618 So.2d at 869.
In Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La.1982), this court held that an automobile accident victim's uninsured motorist carrier was solidarily obligated with the tortfeasor so that the victim's timely suit against the tortfeasor interrupted prescription with regard to the insurer. In Hoefly, this court set forth the elements for determining the existence of a solidary obligation; specifically, this court stated that "[a]n obligation is solidary among debtors when they are obliged to the same thing, so that each may be compelled for the whole, and when payment by one exonerates the other toward the creditor." Id. at 576; La.Civ.Code art. 1794. In Hoefly, this court made it clear that the sources of the obligations are irrelevant so long as the obligors are obligated to repair the same damage. Id. at 579.
The first element of solidarity delineated in Hoefly is that the obligors must be "obliged to the same thing." In Narcise v. Ill. Central Gulf Railroad, 427 So.2d 1192 (La.1983), this court found that a railroad company liable to its employee under the Federal Employer's Liability Act was solidarily liable with a third party tortfeasor. This court explained that it is the coextensiveness of the obligations for the same thing that determines the existence of solidary liability. That is, once the extent of each debtor's liability has been determined, there is a solidary obligation to the extent that they have common liability to the injured party. Id. at 1195. It is the extent of the common liability that determines whether the obligors are obliged for the same thing.
Moreover, in Hoefly and in Narcise, this court explained that the sources of the obligors' debts are irrelevant so long as the obligors are obligated to repair the same damage. Hoefly, 418 So.2d at 579; Narcise 427 So.2d at 1195. Consequently, different sources of liability would not "preclude an in solido obligation to the extent that each is liable for certain damages sustained by plaintiff." Narcise, 427 So.2d at 1195.
In light of these precepts, our inquiry must focus on the obligations of a tortfeasor's liability carrier and a victim's uninsured/underinsured motorist carrier. Every self-propelled motor vehicle registered in this state, with limited exceptions defined by statute, must be covered by an automobile liability policy or by some other form of security. La.R.S. 32:861. A motor vehicle liability policy insures "against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle" subject to monetary limits set by statute. La.R.S. 32:900B. Moreover, "[t]he liability of the insurance carrier with respect to the insurance [provided by the required motor vehicle liability policy] shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs...." La.R.S. 32:900F(1).
The obligations of an uninsured motorist vehicle carrier are defined, in part, by La.R.S. 22:1406D which provided in pertinent part at the time of the accident:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom....
* * * * * *
(ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the *390 following priorities of recover under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
* * * * * *
(2)(a) For the purpose of this coverage, the terms "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.
(b) For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final judgment.
In effect, these provisions make uninsured motorist coverage "excess" coverage. The uninsured motorist carrier has no obligation to pay any portion of an injured insured's damages within the underinsured tortfeasor's liability policy limits. Rather, the uninsured motorist carrier is only obligated to pay those damages which exceed the policy limits of the motor vehicle liability policy and which are within the uninsured motorist policy limits. Niemann v. Travelers Ins. Co., 368 So.2d 1003, 1007 (La.1979). The underinsured motorist carrier's liability is conditioned by the tortfeasor's total or partial lack of liability insurance, the type of damage caused, and any limits in the policy permitted by law. Hoefly, 418 So.2d at 579. For instance, if a plaintiff's damages were $15,000.00 and plaintiff had $5,000.00 uninsured motorist coverage and his tortfeasor had liability limits of $10,000.00, plaintiff would collect $10,000.00 from the liability insurer and $5,000.00 from his or her uninsured motorist carrier. William G. Conly, Highlights of the 1974 Regular Session, 35 La.L.Rev. 616, 618 (1975). The uninsured motorist carrier's liability is conditioned upon exhausting the liability carrier's policy limits.
It is clear that the obligation of the uninsured motorist carrier does not begin until the obligation under the tortfeasor's motor vehicle liability policy ends; there is no overlap. Since an uninsured motorist carrier and a tortfeasor's motor vehicle liability insurer each has a separate obligation which is not coextensive, they are not liable for the same thing. Therefore, the two are not solidary obligors.
Applying these precepts to the present case, we find that USAA, the injured plaintiff's uninsured motorist carrier, and LIGA as successor to American Surety, the tortfeasor's motor vehicle liability insurer, were not liable to the same thing. Accordingly, they are not solidary obligors. Thus, the timely filed suit against American Surety did not interrupt prescription as to USAA which prescribed on March 30, 1992, under La.R.S. 9:5629, since suit was not filed within the two year prescriptive period.
Our conclusion that the claim against USAA has prescribed is unaffected by the technically timely[4] filing of Mr. Rizer's suit against the tortfeasor even though, under Hoefly, a tortfeasor and an uninsured motorist carrier are solidary obligors. Once prescription extinguishes a cause of action, a *391 subsequent timely suit against a solidary obligor cannot revive the already prescribed action. Bustamento v. Tucker, 607 So.2d 532, 536-37 (La.1992); see also Whitnell v. Menville, 540 So.2d 304, 308 (La.1989). "Once prescription occurs, it cannot be interrupted. Timely suit against one solidary obligor does not interrupt prescription that has run against another solidary obligor." Noggarath v. Fisher, 557 So.2d 1036, 1037 (La. App. 4th Cir.1990). We have already concluded that Mr. Rizer's claims against USAA prescribed on March 30, 1992, two years after the accident. Mr. Boudinot was added as a defendant on October 15, 1992, after the claims against USAA had prescribed. There was no action interrupting or suspending the prescriptive period as to the claim against USAA prior to March 30, 1992. Therefore, the technically timely filed suit against Mr. Boudinot filed on October 15, 1992 will not revive the prescribed claim against USAA.
In sum, we find that a tortfeasor's motor vehicle liability carrier is not solidary obligated with an accident victim's uninsured motorist carrier. Accordingly, the timely filed suit against American Surety, the tortfeasor's liability carrier, did not interrupt prescription as to USAA, the injured plaintiff's uninsured motorist carrier. Additionally, we find that the timely filed suit against Mr. Boudinot, the tortfeasor, did not interrupt or revive plaintiff's prescribed claim against USAA. Accordingly, the court of appeal erred in reversing the trial court's judgment maintaining USAA's exception of prescription.

DECREE
For the reasons assigned, the judgment of the court of appeal reversing the trial court's judgment maintaining USAA's exception of prescription is hereby reversed and the judgment of the trial court maintaining USAA's exception of prescription is hereby reinstated.
WATSON, J., dissents and assigns reasons.
CALOGERO, C.J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissenting.
I disagree with the majority's conclusion that a tortfeasor's motor vehicle liability insurance carrier is not solidarily obligated with an accident victim's uninsured motorist insurer, and thus the timely filing of suit against the liability insurer does not interrupt prescription against the uninsured motorist insurer. The majority bases their conclusion on the premise that the obligations of the liability insurer and the uninsured motorist insurer are separate and are not coextensive.
I do not agree. The uninsured motorist ("UM") insurer is in my view conditionally solidarily obligated with the liability insurer. At such subsequent time as the liability insurer may become insolvent, the UM insurer will be liable under the policy and thereupon solidarily liable with the defunct, possibly later to be resurrected, insurance company in liquidation. La.R.S. 22:1386 specifically provides that prior to proceeding against the Louisiana Insurance Guaranty Association Fund in the event of an insurer's insolvency or liquidation, the claimant must first exhaust his rights under any other policy including uninsured or underinsured motorist liability coverage.[1] Hence, the UM insurer is conditionally liable to the victim for the amount of the liability insurer's policy limits in the event of the insolvency or liquidation of the liability insurer.
We have recognized this concept of conditional obligations in previous cases. In Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 579 (La.1982), in considering the relationship of the uninsured motorist insurer and the tortfeasor, we noted: "[t]he uninsured motorist carrier is obliged differently from the tortfeasor because its liability is *392 conditioned by the tortfeasor's total or partial lack of liability insurance, the type of damage he has caused and any limits in the insurer's policy that are permitted by law." (emphasis added). We then cited Civil Code article 2092 as it read in 1982:
"The obligations may be in solido, although one of the debtors be obliged differently from the other to the payment of one and the same thing; for instance, if the one be but conditionally bound, whilst the engagement of the other is pure and simple, or if the one is allowed a term which is not granted to the other."
Former Civil Code article 2092 was reenacted as Civil Code article 1798 which reads: "[a]n obligation may be solidary though for one of the obligors, it is subject to a condition or term." In this case, the obligation of the UM insurer to the victim is solidary with the tortfeasor and the liability insurer, although it is subject to the condition that the UM insurer is only responsible to pay the amount of the liability insurer's policy limits in the event the liability insurer is unable to pay, such as in insolvency.
Further, in Egros v. Pempton, 606 So.2d 780, 785 (La.1992), in discussing the subrogation rights of the uninsured motorist carrier against a non-motorist tortfeasor, the trial court found that the tortfeasor, its insurer and the uninsured motorist carrier were liable in solido for plaintiff's damages, and were thus obliged to do the same thing, "that is, to facilitate the recovery of the insured victim." We affirmed, finding that the uninsured motorist carrier was conditionally bound, "as its obligation is conditioned on a tortfeasor's total or partial lack of liability insurance, the type of damage caused, and the policy limitations allowed by law." 606 So.2d at 786. We concluded that "[s]tate Farm [UM insurer] is solidarily liable with them [non-motorist tortfeasor and liability insurer] up to its policy limits of $100,000." Id.
In this case, the uninsured motorist insurer remains potentially obligated to pay the full amount of damages until such time as the liability insurer fulfills its obligation to pay its policy limits. If, for some reason, the liability insurer cannot pay its policy limits, such as insolvency, the uninsured motorist insurer is so bound to pay. In light of this potential or conditional liability, I believe the uninsured motorist insurer and the liability insurer are indeed at least conditionally solidarily bound and were so at the time the timely lawsuit was filed against the tortfeasor's insurer. Thus, prescription was interrupted against the uninsured motorist insurer when suit was timely filed against the tortfeasor's liability insurer on July 27, 1990, which was within one year of the March 20, 1990 accident, or at the latest on June 10, 1992, the date of the amendment to La. RS 22:1386.
WATSON, Justice, dissenting.
The court of appeal correctly found that the liability carrier and the uninsured motorist carrier are solidary obligors. They shared co-extensive liability to compensate plaintiff for the same damage, i.e., personal injuries resulting from an automobile accident. The fact they are liable for different portions of the damage does not prevent them from being solidary obligors.
I respectfully dissent.
NOTES
[*] Judge Burrell J. Carter, Court of Appeal, First Circuit, sitting by assignment in the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit. Carter, J., recused, not on panel. Rule IV, Part 2, § 3.
[1] In the second supplemental and amending petition, plaintiffs erroneously identified United Services Automotive Association as USAA Insurance Company.
[2] 93-1977 (La.App. 1 Cir. 4/11/95), 654 So.2d 748.
[3] 95-1200 (La. 9/1/95), 659 So.2d 503.
[4] Plaintiff timely filed suit against American Surety, the tortfeasor's motor vehicle liability carrier. The tortfeasor is solidarily obligated with his or her motor vehicle liability carrier. Thus, the timely filed suit against American Surety, Mr. Boudinot's liability carrier, interrupted prescription as to Mr. Boudinot, the tortfeasor. Accordingly, although suit against Mr. Boudinot was filed on October 15, 1992, over two years after the accident, it was timely filed.
[1] La. RS 22:1386 was amended in 1992 to specifically require exhaustion of uninsured or underinsured motorist liability coverage before proceeding against the Louisiana Insurance Guaranty Fund. The amendment was effective June 10, 1992. The jurisprudence has consistently held that this amendment applies retroactively to cases pending at the time the amendment became effective. As this case was pending on June 10, 1992, the amendment to La. RS 22:1386 clearly applies in this case.